## STATE OF CONNECTICUT *v.* STEPHEN O.[1]
### (AC 27896)

DiPentima, Harper and Stoughton, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued November 28, 2007—officially released April 1, 2008

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Vernon D. Oliver*, former assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Stephen O., appeals from the judgment of conviction, following a trial to the court, of two counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (2), one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B), one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) and one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (D).[2] The defendant claims that (1) the trial court improperly permitted the state to present certain evidence of prior misconduct, (2) the court improperly failed sua sponte to conduct a hearing to determine whether the victim, a child, was competent to testify and (3) his constitutional right not to be placed in double jeopardy was violated as a result of his conviction on the charges of risk of injury and sexual assault in the fourth degree. We affirm the judgment of the trial court.

Following an evidentiary hearing, the court set forth its findings of fact and conclusions of law in an oral decision.[3] The court's findings of fact may be summarized as follows. The defendant is the biological father

---

[2] The court acquitted the defendant of one count of sexual assault in the third degree in violation of General Statutes § 53-72a (a) (2). At sentencing, the court merged the conviction of two counts of sexual assault in the fourth degree. The court imposed a total effective sentence of nineteen years imprisonment, suspended after sixteen years, followed by five years of probation.

[3] In accordance with Practice Book § 64-1 (a), the court subsequently created and signed a memorandum of its decision.

of the male victim, who was five years old at the time of the incidents that underlie the defendant's conviction. On several dates in 1998, the defendant sexually abused the victim in the home that the defendant shared at that time with the victim, the victim's two siblings and A, the defendant's girlfriend. Specifically, the defendant placed his hands on the intimate parts of the victim and licked the victim's penis. The defendant also forced the victim to lick the defendant's penis and to taste the defendant's ejaculate. The defendant threatened the victim, including threatening to "kill" the victim, if he did not cooperate with the defendant's sexual demands.

I

The defendant first claims that the court improperly admitted testimonial evidence from three witnesses that he had physically abused the victim. To the extent that we review this claim, we reject it.

The state presented testimony from Kevin Hayes, a police detective. Hayes testified that he participated in two separate investigations concerning the defendant's conduct toward the victim. One investigation related to the allegations of sexual abuse underlying the charges at issue in this case. Another investigation occurred in 1998, when the victim was five years old, and concerned allegations of "physical abuse [by the defendant], specifically, handcuffing [the victim]." After Hayes made this reference to the physical abuse investigation, the defendant's attorney stated: "Objection, Your Honor. I don't see the relevance of a prior allegation not involving sexual abuse." The court responded, "Well, I think it's covered." Absent further objection, Hayes thereafter testified that the defendant was arrested in May, 1998, for physically abusing the victim during the same time frame that the alleged acts of sexual abuse by the defendant had occurred. Hayes testified that during this

"same time period," another adult, A, lived in the defendant's residence and that he interviewed her in connection with the allegations of physical abuse by the defendant against the victim.

The state also presented testimony from the victim, who was ten years old at the time of trial. While testifying concerning the manner in which the defendant sexually abused him, the victim recalled that the defendant threatened him, struck him about his body and handcuffed him to prevent him from moving around. The victim testified that the defendant used metal handcuffs, gold in color, on his legs. The victim also testified that these events occurred when he was five years old. During cross-examination, the victim again acknowledged that the defendant had placed him in handcuffs while compelling him to lick the defendant's "privates . . . ."

The state also presented testimony in rebuttal from A, who testified that she lived at the defendant's residence, where the victim also resided, during the period of time in question in 1998. A testified that she observed the defendant engage in acts of a physical nature against his children, including the victim. A testified that she eventually contacted the department of children and families after the children in the residence had related to her the "difficulties" they had with the defendant and, as A explained, because the defendant "really didn't know how to discipline the kids . . . the only way he knew how to discipline them was to yell at them or to hit them." A acknowledged that her action led to the defendant's arrest on charges related to physical abuse. A also testified that there was "handcuffing" by the defendant and that she observed the defendant apply duct tape over the victim's mouth.

The defendant claims that the court improperly permitted the state to present the foregoing testimony from

Hayes, the victim and A because the evidence was not relevant. The defendant characterizes this "evidence of physical abuse" as "prior misconduct evidence" and claims that it is not admissible under § 4-5 of the Connecticut Code of Evidence. The defendant further claims that, if the evidence was relevant, the court should have excluded it because it was "grossly prejudicial" and "cast [him] into an extraordinarily negative light." See Conn. Code Evid. § 4-3 ("[r]elevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice").

As a preliminary matter, we must address issues of reviewability relating to the different aspects of the defendant's claim. "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 408 n.18, 902 A.2d 1044 (2006).

Our review of the record reveals that the defendant objected only to Hayes' testimony concerning his investigation of physical abuse by the defendant against the

victim in 1998.[4] The defendant's attorney asserted only that that testimony was not relevant. The court overruled the objection, and the defendant did not pursue the matter, assert any alternate ground for the objection or object in any manner to the testimony of a similar nature by either the victim or A.[5] Thus, we will limit our review to the distinct evidentiary claim raised by the defendant at trial, which was whether Hayes' testimony concerning physical abuse was relevant to the issues before the court.

[4] Prior to trial, the defendant filed a motion in limine asking the court to preclude on the grounds of relevance and undue prejudice "any evidence concerning his alleged involvement in crimes or misconduct other than those charged in the information." Although this motion arguably encompassed the evidence at issue in this claim, the record does not reflect that the court at any time acted on this motion. For this reason, the defendant's reliance on the motion for the purpose of preserving the claims of error asserted is misplaced.

"We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and *was ruled upon and decided by the court adversely to the appellant's claim*." (Emphasis added; internal quotation marks omitted.) *State* v. *Moody*, 77 Conn. App. 197, 204, 822 A.2d 990, cert. denied, 264 Conn. 918, 827 A.2d 707, cert. denied, 540 U.S. 1058, 124 S. Ct. 831, 157 L. Ed. 2d 714 (2003). "[I]t is trial counsel's responsibility to ensure that the issues he raises in pretrial motions are addressed before the trial begins. If the court has not acted on a pretrial motion, nothing prevents counsel from requesting a ruling on that motion on the record prior to the start of trial. Similarly, if the court has not acted on a pretrial motion and counsel proceeds with trial instead of seeking a ruling on that motion, nothing prevents him from objecting when the issue presented in that motion arises during trial. By alerting the court that it has not acted on a pretrial motion, or by objecting at trial, counsel provides the court with the opportunity to rule on the record, thereby preserving the issue for appellate review. Counsel may decide as a matter of strategy, however, to abandon an issue by not requesting a ruling on an overlooked pretrial motion or by not objecting at trial. The manner in which trial counsel acts, or fails to act, is of great significance in determining the availability of appellate review." *State* v. *Edwards*, 99 Conn. App. 407, 411, 913 A.2d 1103, cert. denied, 281 Conn. 928, 918 A.2d 278 (2007).

[5] The defendant requests that, to the extent that he has not preserved this claim, we review the claim under the plain error doctrine codified in Practice Book § 60-5. We are not persuaded by the defendant's assertion that this evidentiary claim warrants such extraordinary review.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. "One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 805–806, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006). Generally, absent a prohibition in law to its admissibility, "[a]ll relevant evidence is admissible . . . ." Conn. Code Evid. § 4-2.

This court reviews evidentiary rulings under the abuse of discretion standard of review. See *State* v. *St. John*, 282 Conn. 260, 270, 919 A.2d 452 (2007). "The trial court has wide discretion to determine the relevancy of evidence . . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *Hayes* v. *Camel*, 283 Conn. 475, 483, 927 A.2d 880 (2007).

To sustain a conviction of sexual assault in the third degree in violation of § 53a-72a (a) (1) (B), as charged, the state bore the burden of proving beyond a reasonable doubt that (1) the defendant compelled the victim to submit to sexual contact, (2) the defendant so compelled the victim by the threat of use of force against the victim and (3) such threat reasonably caused the victim to fear physical injury to himself. When viewed in isolation, the testimony from Hayes was probative of the violent and abusive nature of the defendant's

relationship with the victim at the time in question. Consequently, Hayes' testimony made it more likely that the defendant compelled the victim to submit to sexual contact with threats of use of force against the victim and that such threats reasonably caused the victim to fear physical injury to himself. It is reasonable to infer that a five year old who is being subjected to physical abuse from his father during the same time frame that his father is abusing him sexually will be more likely to fear physical injury at the hands of his father, to respond to threats of use of force and to submit to sexual contact than a child who is not being so abused. When viewed in conjunction with the testimony of other witnesses, especially that of the victim, the relevance of this testimony from Hayes is even more apparent. The victim testified that the defendant physically abused him, in part by putting handcuffs on him, during incidents of sexual abuse by the defendant. Hayes' testimony concerning physical abuse by the defendant during this time frame certainly tended to corroborate the victim's testimony and, in fact, concerned the manner in which the defendant actually carried out his sexual abuse of the victim. Thus, the court did not abuse its discretion in admitting the evidence.

## II

The defendant next claims that the court improperly failed to conduct, sua sponte, a hearing to determine whether the victim was competent to testify. We decline to review this claim.

As discussed previously, the state presented testimony from the victim at trial. Prior to testifying, the victim answered questions directed to him by the court and indicated that he would testify truthfully.[6] The defendant did not challenge the victim's competency

---

[6] The following colloquy occurred after the victim was called to the witness stand:

"The Court: You understand what it means to tell the truth, right?

"[The Witness]: Yes.

when the victim was called to testify or at any other point during the trial.[7] It suffices to observe that the grounds on which the defendant now challenges the victim's competency did not arise after the trial but were known to the defendant at the time of trial. Further, at trial, the defendant thoroughly challenged the victim's credibility and ability to recall the events in question.

"The incompetency of a witness is determined at the time [the witness] is offered, or, if the ground of incompetency is discovered during the trial, upon objection promptly made at that time. . . . Challenges to competency must be made when the witness is first sworn if the grounds are then known, otherwise as soon as the grounds became evident." (Citations omitted; internal quotation marks omitted.) *State* v. *Sanchez*, 25 Conn. App. 21, 26, 592 A.2d 413 (1991). The defendant seeks review of this claim in accordance with *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or, in the alternative, under the plain error doctrine codified in Practice Book § 60-5.

---

"The Court: And when you don't tell the truth, you know the word they use for what you're doing? You tell a lie if you don't [tell] the truth; you tell a lie, right? Does that mean yes?

"[The Witness]: Yes.

"The Court: You said you would do that, so I'm sure you will, okay?

"[The Witness]: Yes.

"The Court: And if you don't know the answer to any question, you can tell us that, too.

"[The Witness]: Okay."

[7] The defendant first raised an issue related to the victim's competency after he filed the present appeal. The defendant filed a motion for articulation asking the trial court to "[s]pecify whether [it] found the minor victim . . . competent, and, if so, whether the basis for the conclusion was testimony or statutory," and to "[s]pecify whether the trial court considered the [records in evidence from the department of children and families] in so adjudicating the minor victim, and, if so, what role the records played in that adjudication." In a written response to the defendant's motion, the court declined to articulate with regard to these issues on the ground that they had not been raised at trial. This court thereafter granted the defendant's motion to review the court's ruling; see Practice Book § 66-7; and denied the defendant's request for relief.

It is useful to clarify what is at issue. The court was not asked to evaluate the victim's competency; this claim does not concern whether the victim was a competent witness. Instead, the defendant claims that the court improperly failed to conduct, sua sponte, a hearing to evaluate the victim's competency. The defendant does not cite any relevant authority in support of his novel assertion that such a duty exists. The defendant asserts that "[t]he presentation of an incompetent witness can constitute a violation of the defendant's right to confrontation and due process."

General Statutes § 54-86h provides: "No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification. The weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact." Thus, in Connecticut, crime victims of tender years are not presumed to be incompetent witnesses. *State* v. *Sun*, 92 Conn. App. 618, 625, 886 A.2d 1227 (2005); *State* v. *Rupar*, 86 Conn. App. 641, 647–48, 862 A.2d 352 (2004), cert. denied, 273 Conn. 919, 871 A.2d 1030 (2005); *State* v. *Sanchez*, supra, 25 Conn. App. 26. Our Supreme Court, rejecting a challenge to the constitutionality of § 54-86h, discussed with approval "the modern trend towards the treatment of competency as simply one aspect of the credibility of a witness." *State* v. *James*, 211 Conn. 555, 563, 560 A.2d 426 (1989). The court found favorable similarities between § 54-86h and evidentiary provisions in federal law as well as "the philosophy that few persons are inherently incapable of testifying in a useful manner." (Internal quotation marks omitted.) Id. The court also emphasized that admitting such evidence did not necessarily require the trier of fact to accept it as compelling evidence of any disputed material fact. Providing an example, the court stated: "Certainly if a child sexual

assault victim could only babble or could present no useful evidence, its testimony could hardly be deemed relevant or probative." Id., 564–65.

The defendant has not persuaded us that this claim is of constitutional magnitude. The specific authorities on which the defendant relies for this proposition, *State v. Morant*, 242 Conn. 666, 682, 701 A.2d 1 (1997), and *State v. Paolella*, 211 Conn. 672, 689, 561 A.2d 111 (1989), are not on point. As explained previously, the defendant does not claim that the court infringed on his right to confront the victim or that the court improperly evaluated the victim's competency. Even if the court had ruled on the issue of the victim's competency to testify at trial, such a ruling is evidentiary in nature and, thus, not amenable to review under *Golding*. See, e.g., *State v. Rodriguez*, 68 Conn. App. 303, 307–308, 791 A.2d 621, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). The statutory and decisional law discussed previously bolster our conclusion that this claim is evidentiary in nature; there is no support in law for the defendant's assertion that any constitution imposed a duty on the court sua sponte to inquire into the victim's competency. Likewise, the defendant is unable to demonstrate that plain error exists with regard to this evidentiary claim. For these reasons, we decline to afford any extraordinary means of review to this unpreserved claim.

### III

Finally, the defendant claims that his constitutional right not to be placed in double jeopardy was violated by his conviction of the charges of risk of injury and sexual assault in the fourth degree. We disagree.

The defendant did not raise this issue at trial. As requested by the defendant, we shall review the issue in accordance with *State v. Golding*, supra, 213 Conn. 239–40, because the record is adequate for review and

the defendant's claim is of constitutional magnitude.[8] See *State* v. *Crudup*, 81 Conn. App. 248, 252, 838 A.2d 1053, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004). The claim presents a question of law to which we afford plenary review. Id.

"The fifth amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of [the Connecticut constitution] include protection against double jeopardy. . . .

"We have recognized that the Double Jeopardy Clause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 27, 912 A.2d 992 (2007). The defendant's claim implicates the last of these protections.

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise

---

[8] The defendant refers generally to double jeopardy rights afforded by the federal and state constitutions. Our Supreme Court has held that the federal and state constitutions afford coextensive protection for purposes of double jeopardy. See, e.g., *State* v. *Michael J.*, 274 Conn. 321, 354, 875 A.2d 510 (2005); *State* v. *Ferguson*, 260 Conn. 339, 360, 796 A.2d 1118 (2002). Nevertheless, because the defendant has not separately analyzed his claim under the Connecticut constitution, we shall confine our analysis to the application of the federal constitution's express prohibition against double jeopardy. See *State* v. *Colton*, 234 Conn. 683, 686 n.6, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996).

out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 7, 629 A.2d 386 (1993).

"[Our Supreme Court has] applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Bletsch*, supra, 281 Conn. 27–28. "The issue, though essentially constitutional, becomes one of statutory construction. . . . Under the *Blockburger* test, a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other. . . . The term 'element' as used in the *Blockburger* analysis . . . means any fact that the legislature has deemed essential to the commission of the crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Peay*, 96 Conn. App. 421, 428, 900 A.2d 577, cert. denied, 280 Conn. 909, 908 A.2d 541 (2006).

Count one of the substitute information charged the defendant with risk of injury to a child in violation of § 53-21 (2) in that he "did have contact with the intimate parts of a child . . . ." Count two charged the defendant with risk of injury in violation of § 53-21 (2) in that he "did subject a child under sixteen years of age

. . . to contact with the intimate parts of [the defendant]." Count five charged the defendant with sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A) in that he "did intentionally subject another person . . . to sexual contact who was under fifteen years of age . . . ." Finally, count six charged the defendant with sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (D) in that he "did intentionally subject another person . . . to sexual contact who was less than eighteen years old and [the defendant] was such person's guardian and otherwise responsible for the general supervision of such other person's welfare . . . ."

The defendant claims that he was placed in double jeopardy as a result of his conviction of risk of injury to a child and sexual assault in the fourth degree. He argues that "[t]he trial court should have merged the conviction for risk of injury to a minor into the conviction for sexual assault in the fourth degree." The gist of the defendant's claim is that the conviction of risk of injury and the conviction of sexual assault in the fourth degree are a conviction of the same criminal offenses. Put differently, the defendant claims that "[a]s charged in this case, risk of injury to a minor is a lesser included offense of sexual assault in the fourth degree."

The defendant couches his claim solely in terms of the crimes of which he stands convicted. As set forth previously, however, in the context of a single trial the double jeopardy clause prohibits multiple punishments for the same offense. Thus, we must examine the punishment imposed on the defendant by the court as a result of his conviction of the counts at issue and determine whether the punishment for these counts constituted multiple punishments for the same offense.

At the time that it rendered its decision as to each count, the court concluded that the crimes set fourth

in the fifth and sixth counts were "essentially identical . . . [such] that principles of double jeopardy preclude the court from imposing separate sentences as [to] each count." The court expressed its "intention" to "merge the conviction under the two counts and to impose one sentence" at the time of sentencing. The court sentenced the defendant under count one to a term of incarceration of seven and one-half years. The court sentenced the defendant under count two to a term of incarceration of seven and one-half years to be served consecutively with the sentence imposed under count one. The court later stated: "As to the fifth and sixth counts, which are merged, the sentence of the court is [that] the defendant be committed to the custody of the correction commissioner for a period of one year. Total effective sentence, one year to serve. And that sentence is intended to run concurrently with the sentences imposed under the first three counts."

Thus, at sentencing, the court "merged" the two counts of sexual assault in the fourth degree after clearly manifesting its conclusion that sentencing the defendant under both counts violated his right not to be placed in double jeopardy. Yet, the court did not describe with particularity which count had been merged into the other or, stated differently, which of the two counts it imposed its sentence under. As stated previously, counts five and six alleged distinct crimes brought under different subparagraphs of § 53a-73a (a) (1). We note that the defendant did not ask the court to clarify this aspect of its decision. Nevertheless, despite the fact that the record does not afford us a basis on which to resolve this ambiguity, it ultimately does not hamper our ability to resolve the issue presented.

It appears to be undisputed that the criminal conduct at issue with regard to the risk of injury counts is the same criminal conduct at issue in the counts of sexual

assault in the fourth degree. That is, the counts arise out of the same acts by the defendant. Specifically, these acts are the defendant's touching the intimate parts of the victim's body and his forcing the victim to have contact with the intimate parts of his body. Accordingly, our analysis will be tailored to determining whether, as claimed by the defendant, the risk of injury counts, on the one hand, and the counts of sexual assault in the fourth degree, on the other hand, are the same offenses.

We have reviewed carefully the relevant statutory provisions at issue as well as the substitute information. Count one, as charged, required the state to prove the following elements beyond a reasonable doubt: (1) the defendant had contact with the intimate parts of the victim, (2) the victim was younger than age sixteen and (3) the defendant acted in a sexual and indecent manner likely to impair the health or morals of the victim. See General Statutes (Rev. to 1997) § 53-21 (2). Count two, as charged, required the state to prove the following elements beyond a reasonable doubt: (1) the defendant subjected the victim to contact with the defendant's intimate parts, (2) the victim was younger than age sixteen and (3) the defendant acted in a sexual and indecent manner likely to impair the health or morals of the victim. See General Statutes (Rev. to 1997) § 53-21 (2).

Count five, as charged, required the state to prove the following elements beyond a reasonable doubt: (1) the defendant subjected the victim to sexual contact, (2) the defendant acted intentionally and (3) the victim was younger than fifteen years of age. See General Statutes § 53a-73a (a) (1) (A). Count six, as charged, required the state to prove the following elements beyond a reasonable doubt: (1) the defendant subjected the victim to sexual contact, (2) the defendant acted intentionally, (3) the victim was less than eighteen years

old and (4) the defendant was the victim's guardian or was otherwise responsible for the general supervision of the victim's welfare. General Statutes § 53a-73a (a) (1) (D).

A comparison of the elements of the risk of injury offenses with the elements of the offenses of sexual assault in the fourth degree clearly reflects that the separate offenses required proof of different facts. Both risk of injury counts required proof that the victim was younger than sixteen years of age. In contrast, both counts of sexual assault in the fourth degree required different proof with regard to the victim's age; count five required proof that the victim was younger than fifteen years of age, and count six required proof that the victim was less than eighteen years of age. See *State* v. *Morris*, 49 Conn. App. 409, 419, 716 A.2d 897 (contrasting for *Blockburger* purposes proof of age required by § 53-21 with that required by § 53a-73a [a] [1] [A]), cert. denied, 247 Conn. 904, 720 A.2d 516 (1998).

Furthermore, "sexual contact" is an element common to both counts five and six. This court has held that "the element of 'sexual contact,' included within the offense of sexual assault in the fourth degree, is not necessarily equivalent to the touching of the private parts of a child in a 'sexual and indecent manner' . . . prohibited by the risk of injury to a child statute. The term 'sexual contact' is defined as 'any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person' . . . . The mental state required for the offense of sexual assault in the fourth degree, therefore, is clearly different from that required for the offense of risk of injury to a child." (Citations omitted.) Id.

For these reasons, we conclude that, under the *Blockburger* test, the offenses at issue are not the same

for double jeopardy purposes. "[T]he *Blockburger* test, as a rule of statutory construction, simply creates a rebuttable presumption as to the actual legislative intent, [and] it is not a blind presumption that may be applied without regard to other relevant evidence of true intent. It would be absurd indeed to apply *Blockburger*, which was meant to help determine legislative intent, in a way that actually defeats what reason and logic dictate to be the intent. . . . The United States Supreme Court and our Supreme Court have made clear that the *Blockburger* rule should not be controlling where, for example, there is a clear indication of contrary legislative intent [and] [t]he language, structure and legislative history of a statute can provide evidence of this intent." (Citation omitted; internal quotation marks omitted.) *State* v. *Quint*, 97 Conn. App. 72, 79, 904 A.2d 216, cert. denied, 280 Conn. 924, 908 A.2d 1089 (2006).

The defendant claims that the legislative history of § 53-21 (2) demonstrates "[t]he expectation of the legislature that one charge or the other [risk of injury or sexual assault in the fourth degree] would be brought against an individual based upon a given set of facts." The defendant also claims that "[w]hat is manifest in the legislative debate is the intention to create a new form of risk of injury, constituting a sex offense, and to lump those individuals convicted with that offense together with the other sex offenders." The excerpts of the legislative debate that culminated in the codification of § 53-21 (2) in 1995, on which the defendant relies, do not support these assertions. To the contrary, this court has interpreted the relevant legislative history and has held that in amending the risk of injury statute to create subdivision (2), "the legislature intended to create a new crime." *State* v. *Ellison*, 79 Conn. App. 591, 603, 830 A.2d 812, cert. denied, 267 Conn. 901, 838 A.2d 211 (2003). Accordingly, the defendant has not

persuaded us that the presumption that resulted from our application of the *Blockburger* test should not be controlling here.

The judgment is affirmed.

In this opinion the other judges concurred.