******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* RODERICK ROGERS
## (AC 40125)

Lavine, Alvord and Beach, Js.

*Syllabus*

Convicted of the crimes of murder, conspiracy to commit murder and assault in the first degree in connection with a shooting incident that resulted in the death of one of the victims, the defendant appealed, claiming, inter alia, that the trial court improperly precluded him from introducing certain evidence that a firearm used in the shooting incident had been found in the possession of a third party. The defendant and J, who also was involved in the shooting, were tried jointly to a jury. The defendant's cousin, A, had driven the defendant and J to and from the scene of the shooting. The state had retained W to analyze certain global positioning system and cell phone data to determine the locations of the defendant, J and A at the time of the shooting. The defendant, prior to trial, had filed a motion in limine, seeking, inter alia, to preclude the admission of certain of the state's evidence pertaining to cell phone towers. The trial court did not rule on the defendant's motion. During trial, J filed a motion in limine to preclude W's testimony and certain maps that W had prepared. The court denied J's motion after a hearing out of the presence of the jury. The defendant did not ask questions or oppose W's proposed testimony during the hearing and did not object during trial to W's testimony or to other evidence that was admitted during W's testimony. The trial court also granted the state's motion to preclude J from introducing evidence that one of the firearms used in the shooting had been found in the possession of a third party. The defendant's counsel remained silent during argument on the state's motion and thereafter indicated to the court that he did not intend to offer any other evidence pertaining to the firearm. *Held*:

1. The defendant's claim that the trial court improperly precluded him from introducing evidence that a firearm that was used in the shooting was found in the possession of a third party was not reviewable, the defendant having failed to preserve the claim for review; a defendant who wants to preserve for appeal a nonconstitutional claim that was raised by a codefendant in a consolidated trial must join the codefendant's claim or separately make the claim himself, and the defendant here conceded that he did not independently object to the state's motion to preclude the evidence or attempt to introduce the evidence himself.

2. The defendant could not prevail on his unpreserved claim that the trial court violated his constitutional right to present a defense when it precluded him from introducing certain third-party culpability evidence, which he claimed was relevant to his theory that A was one of the shooters; because the foundation of the defendant's claim was a relevance claim that he did not distinctly raise before the trial court, the defendant's constitutional claim was premised on a distinct, and unpreserved, claim of relevance, which was an evidentiary matter, and even if the defendant requested review of it pursuant to *State* v. *Golding* (233 Conn. 213), the claim, being evidentiary in nature, failed under the second prong of *Golding*.

3. This court declined to review the defendant's unpreserved evidentiary claim that the trial court improperly permitted W to testify without first holding a hearing as to the reliability of his methodology: the defendant did not identify where in the record he had objected to W's testimony or requested a hearing, apart from a request contained in his motion in limine, nor did he identify where in the record the court ruled on his motion in limine, he did not join in J's motion to preclude W's testimony, and even if he had, J's counsel did not request such a hearing; moreover, the defendant failed to demonstrate that W's testimony or the maps that W prepared had substantially affected the jury's verdict, as that evidence was cumulative of and paled in comparison to other unchallenged evidence that was before the jury.

Argued January 29—officially released July 24, 2018

Substitute information charging the defendant with four counts of the crime of assault in the first degree, and with the crimes of murder and conspiracy to commit murder, brought to the Superior Court in the judicial district of Fairfield, where the court, *Kavanewsky, J.*, granted the state's motion to consolidate the case for trial with that of another defendant; thereafter, the matter was tried to the jury; subsequently, the court granted the state's motion to preclude certain evidence; verdict and judgment of guilty, from which the defendant appealed. *Affirmed.*

*Megan L. Wade*, assigned counsel, with whom were *James P. Sexton*, assigned counsel, and, on the brief, *Marina L. Green*, assigned counsel, *Emily Graner Sexton*, assigned counsel, and *Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *C. Robert Satti, Jr.*, supervisory assistant state's attorney, and *Pamela J. Esposito*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Roderick Rogers, appeals from the judgment of conviction, rendered following a consolidated jury trial,[1] of one count of murder in violation of General Statutes § 53a-54a (a), one count of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), and four counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (5). On appeal, he claims that the trial court improperly (1) precluded the introduction of evidence that one of the firearms used in the shooting of the victims was eventually found in the possession of a third party, (2) excluded evidence of a text message conversation he claims was relevant to third-party culpability in violation of his right to present a defense pursuant to the sixth and fourteenth amendments to the federal constitution, and (3) admitted into evidence maps depicting the location of cell phones,[2] and related testimony, without first conducting a *Porter*[3] hearing. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts that provide the context for this appeal. At approximately 2:30 p.m. on September 10, 2013, a group of individuals—LaChristopher Pettway, Aijholon Tisdale, Jauwan Edwards, Leroy Shaw, and Tamar Hamilton—congregated outside the Trumbull Gardens housing project, located in the north end of Bridgeport. At this same time, two men approached the group, and one of them said, "y'all just came through the Ave shooting Braz, you all f'd up." The two men then pulled out nine millimeter handguns and shot at the group. One bullet struck Pettway in the back, piercing his lung; Pettway later died from his gunshot wound. Tisdale, Edwards, Shaw, and Hamilton were also struck by bullets; each of them survived the assault. After the shooting, the two men ran away toward a nearby street. During the ensuing police investigation into the shooting, Hamilton, Shaw, and Tisdale identified the defendant as one of the men who shot at them.

By way of an amended long form information, the state charged the defendant with one count of murder, one count of conspiracy to commit murder, and four counts of assault in the first degree. A jury found the defendant guilty of all counts. The court accepted the jury's verdict, rendered judgment, and sentenced the defendant to a total effective sentence of forty-five years imprisonment.[4] This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the defendant's claim that the court improperly precluded him from introducing evidence that one of the firearms used in the shooting of the victims was eventually found in the possession of a third party. Because we conclude that the defendant

failed to preserve this evidentiary claim for appeal, we decline to address it.

The following procedural history is relevant. On the basis of the police investigation, the state also charged Raashon Jackson, a codefendant, with the same crimes as the defendant. The court consolidated their cases for trial. During the course of the consolidated jury trial, on October 22, 2015, the state filed a motion in limine seeking to preclude Jackson from introducing evidence that one of the two firearms used in the September 10, 2013 shooting was found in the possession of a third party.[5] The state argued that such evidence was not relevant as third-party culpability evidence because it failed to demonstrate a "direct connection" between the third party and the subject shooting.[6]

The court heard argument regarding the state's motion in limine, at which time Todd A. Bussert, counsel for Jackson, made two interrelated arguments regarding the proffered evidence. First, the firearm was relevant simply because it was one of the firearms used in the September 10, 2013 shooting, and second, "it is significant that it wasn't found in *Mr. Jackson's* possession or [in] any way tied to him." (Emphasis added.) Following argument, the court granted the state's motion in limine and precluded the introduction of such evidence. The defendant and his counsel, James J. Pastore, remained silent throughout oral argument. When the court inquired whether "*either* defendant intend[s] to put on any other evidence [regarding the firearm found in the third party's possession]"; (emphasis added); Bussert and Pastore both indicated that they did not.

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly." (Internal quotation marks omitted.) *State* v. *Miranda*, 327 Conn. 451, 464–65, 174 A.3d 770 (2018).

The defendant concedes that he did not independently object to the state's motion in limine. He also concedes that he did not attempt to introduce the evidence proffered by Jackson. Nonetheless, he argues that he "was not . . . required to obtain a second ruling on the same issue in order to preserve the record for review." We disagree. A defendant who wants to preserve a nonconstitutional issue for appeal raised by a codefendant in a consolidated trial must either join the claim advanced by his or her codefendant or otherwise separately make the claim. See *State* v. *Gould*, 241 Conn. 1, 9 n.3, 695 A.3d 1022 (1997) (defendant did not advance codefendant's claim at trial; "[w]hen a defendant does not join a codefendant's motion for tactical or other reasons, the defendant cannot later complain of the procedure on appeal"); *State* v. *Walton*, 227 Conn. 32,

55 n.20, 630 A.2d 990 (1993) (defendant did not join codefendants' midtrial motions for separate trial, nor did he make his own similar motion; Supreme Court "presume[d] that his silence in the face of a similar midtrial motion by [a codefendant], specifically joined by [a second codefendant], was for tactical or other reasons he deemed to be valid"); *State* v. *Tok*, 107 Conn. App. 241, 245 n.2, 945 A.2d 558 (defendant could not raise unpreserved evidentiary claim on appeal based on codefendant's objection, citing *Gould*), cert. denied, 287 Conn. 919, 951 A.2d 571 (2008). Accordingly, the defendant did not preserve this issue for appeal and, therefore, we decline to address it.[7]

## II

The defendant next claims that the trial court improperly precluded him from introducing certain third-party culpability evidence in violation of his right to present a defense pursuant to the sixth and fourteenth amendments to the federal constitution. He argues that the trial court improperly prevented him from cross-examining David Anderson, a witness for the state, about a text message conversation that allegedly appeared on Anderson's cell phone. According to the defendant, "[e]vidence that . . . Anderson had been seeking ammunition eight days before the shooting would have been relevant to support the defendant's theory that . . . Anderson was one of the shooters . . . ." In response, the state contends that the defendant did not raise the specific relevance claim he pursues on appeal and, therefore, that the evidentiary basis for his claim is unreviewable. Alternatively, the state argues that, even if we were to review the defendant's claim in accordance with *Golding*,[8] it fails to satisfy *Golding*'s second, third, and fourth prongs. Because we conclude that the defendant's claim hinges on an unpreserved relevancy argument, we agree with the state.

Anderson, the defendant's cousin, testified at trial on behalf of the state. According to him, on September 10, 2013, he drove the defendant and Jackson in his white 2004 Nissan Maxima to the north end of Bridgeport at approximately 2 p.m. The defendant instructed him to drive to an area near the Trumbull Gardens housing project.[9] While Anderson was driving on a street near the Trumbull Gardens housing project, the defendant said that "he [had] seen someone he knew," and that Anderson should park the car and then wait for him and Jackson until they returned. The defendant and Jackson then exited the car and headed toward whomever the defendant recognized. Shortly thereafter, Anderson heard "firecracker sounds." Approximately two minutes after Anderson parked his car, the defendant and Jackson returned and entered Anderson's Nissan Maxima, and the defendant told Anderson, "[a]ll right, go ahead." Anderson heard sirens as he then drove the defendant and Jackson away from the area.

During cross-examination, Pastore, counsel for the defendant, sought to question Anderson about a text message conversation that allegedly appeared on Anderson's cell phone. Pastore asked Anderson, "[w]ho is Popa Anderson?" Anderson did not answer that question, however, as the prosecutor immediately objected and claimed that the inquiry was not relevant. Outside the presence of the jury, Pastore represented to the court: "There's a text message from Mr. Anderson's phone from a Popa Anderson to another individual by the name of Los Des, and I'm asking and inquiring of who those individuals are." The following colloquy then took place:

"The Court: Well, what else—what else would you have though to make that relevant?

"[Pastore]: Well, depending on how the person answers the questions, the relevancy—

"The Court: I mean, what's your proffer? Do you know?

"[Pastore]: The relevancy is, there's a—there's a chat between those individuals regarding—

"The Court: Between?

"[Pastore]: Anderson—this Popa Anderson and this Los Des regarding thirty-two shells or a request for [.38 caliber] shells.

"The Court: Okay.

"[Pastore]: On September 2, eight days before the alleged incident here.

"The Court: Okay. And spit it out for me. How's that relevant to what's on the trial here?

"[Pastore]: Well, some of the casings that were recovered were [.38 caliber shells].

"The Court: Okay.

"[Pastore]: So, I'm inquiring of this witness, first of all, who those individuals are, and then whether or not he's—whether he's aware that that chat occurred.

"The Court: Is there anything more than that?

"[Pastore]: No, Your Honor.

"The Court: Right now?

"[Pastore]: No, Your Honor.

"The Court: So, you have these text messages from these two individuals you want to—and you're saying that on his phone there's a request by this witness?

"[Pastore]: It was a request by someone entitled Popa Anderson.

"The Court: For?

"[Pastore]: The exact text is: Yo, bitch, do you know

anybody with [.38] shells?

"The Court: So, it's not even this witness who's making the request for the [.38 shells], it's somebody purportedly texting him?

"[Pastore]: No. The text is from an individual named Popa Anderson.

"The Court: Who's the one requesting or asking about the [.38 shells]?

"[Pastore]: Popa Anderson.

"The Court: Not this witness?

"[Pastore]: I don't—I don't—

"The Court: The witness is being inquired of by Popa Anderson about [.38] shells.

"[Pastore]: No. No.

"The Court: That's what—

"[Pastore]: Well, that's why—I think I first need to establish who that individual is, and so that's my first question to this witness.

\* \* \*

"The Court: So, it's a text between two other people about [.38] caliber shells that somehow appears up on his phone.

"[Pastore]: Correct.

"The Court: Sustained. Bring the jurors back in."

Following the court's ruling, Pastore cross-examined Anderson on different matters. The defendant now claims on appeal that the trial court deprived him of his right to present a defense under the sixth and fourteenth amendments to the federal constitution.

"It is fundamental that the defendant's rights to confront the witnesses against him and to present a defense are guaranteed by the sixth amendment to the United States constitution. . . . A defendant's right to present a defense is rooted in the compulsory process and confrontation clauses of the sixth amendment. . . . Furthermore, the sixth amendment rights to confrontation and to compulsory process are made applicable to state prosecutions through the due process clause of the fourteenth amendment. . . .

"These sixth amendment rights, although substantial, do not suspend the rules of evidence . . . . A court is not required to admit all evidence presented by a defendant; nor is a court required to allow a defendant to engage in unrestricted cross-examination. . . . Instead, [a] defendant is . . . bound by the rules of evidence in presenting a defense . . . . Nevertheless, exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights . . . . Thus, [i]f the proffered evidence is not relevant . . .

the defendant's right[s] to confrontation [and to present a defense are] not affected, and the evidence was properly excluded." (Citation omitted; internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 593–94, 175 A.3d 514 (2018). We review an evidentiary ruling by the trial court for an abuse of discretion. See, e.g., *State* v. *Calabrese*, 279 Conn. 393, 406–407, 902 A.2d 1044 (2006).

It is also well established that "[a]ppellate review of evidentiary rulings is ordinarily limited to the specific legal [ground] raised by . . . trial counsel. . . . To permit a party to raise a different ground on appeal than [that] raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party." (Internal quotation marks omitted.) *State* v. *Jones*, 115 Conn. App. 581, 601, 974 A.2d 72, cert. denied, 293 Conn. 916, 979 A.2d 492 (2009); see also *State* v. *Adorno*, 121 Conn. App. 534, 548 n.4, 996 A.2d 746 ("[o]rdinarily, we will not consider a theory of relevance that was not raised before the trial court"), cert. denied, 297 Conn. 929, 998 A.2d 1196 (2010).

On appeal, the defendant claims that the trial court's ruling preventing him from asking Anderson, "[w]ho is Popa Anderson," and continuing that inquiry, deprived him of the opportunity to present relevant evidence that Anderson "was one of the shooters . . . ." More specifically, he maintains that such evidence was relevant third-party culpability evidence that "raise[d] more than a bare suspicion that Mr. Anderson was one of the two shooters." He did not, however, distinctly assert this claim of relevance at trial, notwithstanding the opportunity to do so after the court repeatedly asked defense counsel to state the relevance of the proffered evidence. Rather, Pastore maintained that such evidence was more generally relevant because "some of the casings that were recovered [from the scene of the shooting were the same caliber as those discussed in the text message conversation]." The defendant's constitutional claim is therefore premised on a distinct, and unpreserved, claim of relevance, an evidentiary matter. See *State* v. *Jones*, supra, 115 Conn. App. 601 (declining to review relevance claim raised for first time on appeal within context of defendant's claim that trial court deprived him of his constitutional right to cross-examine witnesses).

We also note that the defendant now raises an unpreserved constitutional claim on appeal—without requesting *Golding* review. We agree with the state, however, that even if we were to apply *Golding* to the defendant's unpreserved constitutional claim; see *State* v. *Elson*, 311 Conn. 726, 754–55, 91 A.3d 862 (2014) (overruling "affirmative request" requirement); the defendant's claim fails to satisfy *Golding*'s second prong. See *State* v. *Golding*, 213 Conn. 233, 239, 567 A.2d 823 (1989) (second prong requires claim to be of

constitutional magnitude), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). As previously stated, the foundation of the defendant's constitutional claim regarding the proffered evidence is a relevance claim that the trial court did not distinctly have before it.[10] The defendant, therefore, clothes the issue in constitutional garb, but it is actually evidentiary in nature. See *State* v. *Jones*, supra, 115 Conn. App. 602 (defendant's constitutional claim failed to satisfy second prong of *Golding* because "[i]t [was] . . . merely a claim of relevance"). Accordingly, the defendant cannot prevail on his claim.

### III

The defendant's final claim is that the trial court improperly admitted into evidence maps depicting the location of cell phones and related testimony. More specifically, he argues that the court improperly declined to hold a *Porter* hearing to determine the admissibility of testimony and maps developed by Andrew Weaver, a witness for the state, which described the defendant's movements on September 10, 2013, according to his cell phone use. The defendant maintains that the court was required to hold a *Porter* hearing "to determine whether the software program . . . Weaver used to create the map[s] showing the location of the defendant's cell phone was reliable." According to the defendant, the court abused its discretion when it failed to do so, and such evidence substantially affected the verdict. The state argues that the defendant's claim is unreviewable and, alternatively, that any error was harmless. We agree with the state that the claim is unreviewable and, even if it were reviewable, any error was harmless.

The following additional facts, which the jury reasonably could have found, and procedural history are relevant to this claim. Prior to trial, the defendant filed a motion in limine seeking to "[preclude] the admission of cellular telephone tower 'ping' evidence. In the alternative, the defendant request[ed] a hearing pursuant to . . . *Porter* to determine the scientific reliability of said evidence." The defendant's motion was dated July 17, 2014, and was filed with the court that same day.[11]

On October 20, 2015, after trial began, the court held a hearing outside the presence of the jury in connection "with the motion in limine to preclude testimony of Sergeant Andrew Weaver *filed by Mr. Jackson's counsel, dated October 7 [2015]*." (Emphasis added.) The court initially understood Jackson's motion to challenge Weaver's testimony as being based on two grounds. First, the state's disclosure of Weaver's anticipated testimony was late or incomplete, and second, the software used by Weaver to generate certain maps was "problematic." The court also noted: "The other area [it wanted to address], in fairness to the defense, is the reliability of this GeoTime software [used by Weaver] and whether

. . . Weaver is qualified as an expert to do what he's done."

Responding to the court's statements, Bussert stated in relevant part: "Just two things, Your Honor. . . . In terms of . . . Weaver's qualifications to testify as an expert and the state's memorandum in opposition, which seems to focus largely on the issue of whether or not the proffer purpose of . . . Weaver's testimony was generally inadmissible . . . I don't think we ever really contested that this type of information can be presented to a jury if coming in through a proper expert. And in terms of . . . Weaver's qualifications, we would just like to voir dire him during his testimony if he's allowed to testify. So, that's not really a basis. And then also—and I think there was one issue. . . . One issue that we see as substantive with respect to the—to the PowerPoint presentation slideshow that he—that Sergeant Weaver has presented to us for review, and that is in particular the second page, which is that entire summary page."

Weaver testified during the hearing and, following the hearing, the court denied the motion in limine and permitted the state to introduce Weaver's testimony and the maps he created. Although he was present during this hearing, Pastore did not ask any questions, nor did he oppose Weaver's proposed testimony or the maps he had prepared.[12]

The state thereafter called Weaver to testify at trial. He testified, on direct examination, that he had prepared certain maps based on "GPS [global positioning system] material for a person by the name of Mr. Anderson" and "data from three different cell phones" provided by the state.[13] According to Weaver, the maps, which were contained in a PowerPoint presentation that was admitted into evidence, portrayed Anderson's specific movements before and after the September 10, 2013 shooting. Weaver testified that those maps were partially based on location data he received from the state that derived from a GPS bracelet Anderson wore on his ankle. Weaver also testified that the maps depicted, generally, where the defendant and Jackson made or received certain calls on their cell phones before and after the shooting.[14] These maps demonstrated that Anderson, the defendant, and Jackson were in the area of the shooting when it took place, and left the area soon after the shooting. At trial, the defendant did not object to Weaver's testimony, nor did he object to the PowerPoint presentation containing the maps Weaver prepared using the GeoTime software.

We now set forth the legal principles governing our review of the defendant's claim. "We review a trial court's decision [regarding the admission of] expert testimony for an abuse of discretion. . . . If we determine that a court acted improperly with respect to the admissibility of expert testimony, we will reverse the

trial court's judgment and grant a new trial only if the impropriety was harmful to the appealing party." (Internal quotation marks omitted.) *State* v. *Steele*, 176 Conn. App. 1, 32, 169 A.3d 797, cert. denied, 327 Conn. 962, 172 A.3d 1261 (2017). "It is [also] well settled that this court is not bound to consider any claimed error unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Peeler* v. *Commissioner of Correction*, 170 Conn. App. 654, 677, 155 A.3d 772, cert. denied, 325 Conn. 901, 157 A.3d 1146 (2017).

The defendant relies on our Supreme Court's decision in *State* v. *Edwards*, 325 Conn. 97, 156 A.3d 506 (2017), in which the court "was presented with two issues of first impression, specifically, whether: (1) 'a police officer needed to be qualified as an expert witness before he could be allowed to testify regarding cell phone data'; id., 127; and (2) 'the evidence introduced through [the police officer] was of a scientific nature such that a [*Porter* hearing] was required.' . . . The court answered those two questions in the affirmative, concluding that the trial court improperly admitted cell phone data and cell tower coverage maps into evidence without qualifying the police officer as an expert and conducting a *Porter* hearing to determine whether the officer's testimony was based on a reliable scientific methodology." (Citations omitted; footnote omitted.) *State* v. *Turner*, 181 Conn. App. 535, 550–51,     A.3d     (2018).

We conclude that the defendant failed to preserve his evidentiary claim for appeal. Although he directs our attention to points in the record where the court ruled on *Jackson's October 7, 2015* motion in limine, he does not direct our attention to where in the record the court distinctly ruled on his July 17, 2014 motion in limine.[15] Nor does he direct our attention to where he objected to the introduction of Weaver's testimony or where he requested a *Porter* hearing, apart from the request contained in his July 17, 2014 motion in limine. The defendant also did not join Jackson's motion in limine and, even if he had, counsel for Jackson did not request a *Porter* hearing. See *State* v. *Jackson*, 183 Conn. App. 623, 650,     A.3d     (2018). Finally, our independent review of the record fails to reveal where the court either ruled on the defendant's motion in limine or otherwise denied his request for a *Porter* hearing. Accordingly, the defendant's evidentiary claim is unpreserved.[16] See, e.g., *Peeler* v. *Commissioner of Correction*, supra, 170 Conn. App. 677; see also *State* v. *Turner*, supra, 181 Conn. App. 551 (dictates of *Edwards* raise evidentiary concerns); *State* v. *Stephen O.*, 106 Conn. App. 717, 723 n.4, 943 A.2d 477 (evidentiary claim unpreserved for appeal because, "[a]lthough [the defendant's pretrial motion in limine] arguably encompassed the evidence at issue . . . the record does not reflect that

the court at any time acted on this motion"), cert. denied, 287 Conn. 916, 951 A.2d 568 (2008).[17]

Even if the defendant's claim was properly before this court, he has failed to demonstrate that Weaver's testimony or the maps he created substantially affected the verdict. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper evidentiary ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Edwards*, supra, 325 Conn. 133.

The testimony from Weaver and the maps depicting the location of the cell phones were cumulative and paled in comparison to other unchallenged evidence before the jury. Anderson testified that he picked up the defendant and Jackson in his white Nissan Maxima, drove them to an area near the September 10, 2013 shooting at the Trumbull Gardens housing project, dropped them off at a nearby street at approximately the same time the shooting occurred, and then drove them away from the area after hearing "firecracker sounds" and approaching sirens. See, e.g., *State* v. *Edwards*, supra, 325 Conn. 134 (evidentiary error deemed harmless because, even without improperly admitted cell phone data and maps, jury could conclude that defendant was in area when robberies occurred based on other unchallenged evidence). Although the defendant disputes Anderson's credibility on appeal, he does not challenge the admissibility of his testimony. Additionally, during the police investigation and at trial, some of the victims positively identified the defendant as one of the men who shot them. See, e.g., *State* v. *Bouknight*, 323 Conn. 620, 627–29, 149 A.3d 975 (2016) (evidentiary error deemed harmless based on multiple eyewitnesses identifying defendant as shooter).[18]

Other evidence before the jury further corroborated the maps depicting the location of the cell phones presented through Weaver. The maps Weaver created demonstrated that Anderson was in the area of the shooting

when it happened, based on a GPS ankle bracelet that Anderson wore at the time. According to Weaver, the GPS logs provided the "[s]pecific" location of an individual. On appeal, the defendant does not challenge the admissibility of this GPS evidence. The state also introduced surveillance camera footage depicting Anderson's white Nissan Maxima traveling toward the Trumbull Gardens housing project at approximately the time of the shooting, being within ninety-one yards of the shooting approximately when it happened, and that two men exited the car at approximately 2:31 p.m.

Weaver also testified that cell phone data can only approximate the cell phone's location to a general "coverage area." In other words, he acknowledged the limited accuracy of the challenged evidence. Bussert even cross-examined him on the fact that cell phone data can only provide an "approximation" as to a cell phone's location. And although Pastore's cross-examination of Weaver was limited, Weaver acknowledged that the location of the defendant's cell phone was not depicted in some of the slides contained in Weaver's PowerPoint presentation. See, e.g., *State* v. *Edwards*, supra, 325 Conn. 135 (improperly admitted evidence deemed harmless due, in part, to rigorous cross-examination "on the accuracy of the cell phone data"). Accordingly, we cannot conclude that admitting into evidence Weaver's testimony and the maps depicting the location of the cell phones, even if improper, substantially affected the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The present appeal is a companion case to an appeal filed by Raashon Jackson, the codefendant in the consolidated jury trial. See *State* v. *Jackson*, 183 Conn. App. 623,      A.3d      (2018).

[2] The defendant refers to the challenged evidence as "cellular telephone tower ping data," "maps," and related testimony. The challenged evidence consisted of testimony and documentary evidence regarding maps depicting the location of certain cell phones based on the historical billing records for those cell phones.

[3] See *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998).

[4] On the charge of murder, the court sentenced the defendant to forty-five years imprisonment; on the charge of conspiracy to commit murder, the court sentenced the defendant to twenty years imprisonment; and on each of the four charges of assault in the first degree, the court sentenced the defendant to twenty years imprisonment. The sentences ran concurrently with one another.

[5] The subject firearm was found in the possession of Terrance Clark on August 23, 2014—approximately eleven months after the September 10, 2013 shooting—when he was arrested on unrelated charges.

[6] In Connecticut, third-party culpability evidence may be deemed relevant and admissible only if the defendant first demonstrates a "direct connection" between the charged crime and a third party. See footnote 10 of this opinion.

[7] The defendant's reliance on *State* v. *Velky*, 263 Conn. 602, 614–15, 821 A.2d 752 (2003) (jury trial with one defendant; clear indication that defendant's efforts would have been futile based on trial court's pretrial conference statements regarding specific evidentiary claim raised on appeal), and *People* v. *Mezon*, 80 N.Y.2d 155, 160–61, 603 N.E.2d 943, 589 N.Y.S.2d 838 (1992) (jury trial with one defendant; trial court "stated unequivocally that it would permit oral motion," notwithstanding state's opposition), fails to persuade us to reach a different result.

[8] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

[9] Anderson testified that the state had charged him with conspiracy to commit murder in connection with the September 10, 2013 shooting.

[10] Although third-party culpability evidence is governed generally by rules relating to relevancy, specific requirements determine its admissibility. See, e.g., *State* v. *Hedge*, 297 Conn. 621, 635, 1 A.3d 1051 (2010) ("[t]he defendant must . . . present evidence that directly connects a third party to the crime"); *State* v. *Arroyo*, 284 Conn. 597, 609, 935 A.2d 975 (2007) (proffered third-party evidence must "establish a direct connection to a third party, rather than raise merely a bare suspicion regarding a third party"). The record does not indicate that the trial court sustained the state's objection on the ground that the defendant failed to meet these strict requirements. Cf. *State* v. *Hedge*, supra, 633 (claim that defendant's constitutional right to present defense was violated deemed reviewable because, "although the defendant initially sought to introduce the evidence for a more limited purpose, the trial court treated the proffered testimony as third party culpability evidence" and because, following court's ruling, "the defense treated the testimony as giving rise to a third party culpability claim").

[11] Although the record is unclear, it appears that Pastore, in a pretrial proceeding, had asked the court to address his motion in limine at trial.

[12] At the start of the hearing, the court noted that it would permit Pastore to cross-examine Weaver in connection with the hearing on Jackson's motion in limine.

[13] Bussert initially conducted a voir dire of Weaver regarding the PowerPoint presentation of the maps he created. Pastore, however, indicated that he did not have an objection to the admissibility of Weaver's PowerPoint presentation.

[14] For a comprehensive review of how law enforcement uses cell phone call records to approximate the locations of an individual at a particular time, see, e.g., *State* v. *Steele*, 176 Conn. App. 1, 14–24, 169 A.3d 797, cert. denied, 327 Conn. 962, 172 A.3d 1261 (2017).

[15] In support of his argument that his claim is preserved, the defendant relies on the following portion of the court's oral ruling: "[E]xcept to an extent that I'm going to say right now, I'm going to deny the motion in limine because I don't feel that there's been true—a true prejudice *visited upon the defendants by these circumstances*. I won't go back to how I feel about those circumstances." (Emphasis added.) We note that the court was particularly concerned with the alleged late disclosure of Weaver's testimony and his PowerPoint presentation, and its oral ruling makes no mention of a *Porter* hearing. Indeed, Bussert did not request such a hearing. See *State* v. *Jackson*, supra, 183 Conn. App. 650. Accordingly, we are unpersuaded that the defendant's evidentiary claim is properly preserved by this excerpt of the court's ruling.

[16] The defendant also contends that his evidentiary claim is reviewable because our Supreme Court's decision in *Edwards*, which was decided while his appeal was pending, applies retroactively to pending cases. See, e.g., *State* v. *Hampton*, 293 Conn. 435, 457, 988 A.2d 167 (2009) ("judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending" [internal quotation marks omitted]). Although this court has recognized that the rule announced in *Edwards* is retroactively applicable; see *State* v. *Turner*, supra, 181 Conn. App. 549 n.13 (stating that *Edwards* "retroactively applies to the present case because 'a rule enunciated in a case presumptively applies retroactively to pending cases' "); we are unpersuaded that the defendant's claim is reviewable. See *State* v. *Jackson*, supra, 183 Conn. App. 652–53 (recognizing retroactivity of *Edwards*, but declining to review unpreserved evidentiary claim pursuant to *Edwards*).

[17] The state also argues that the defendant's claim regarding the cell phone coverage maps is unreviewable because his motion in limine sought only to preclude cell phone tower "ping" evidence, rather than the maps created by Weaver based on "historical billing records." According to the state, "Ping evidence is completely different from the mapping of a defendant's location using historical billing records." Thus, the state maintains that the defendant failed, at trial, to challenge the *specific* evidence presented by the state through Weaver. We need not address this argument and therefore express no opinion on it.

[18] The state's case against the defendant also consisted of consciousness of guilt evidence. Anderson testified that, although he had been untruthful with investigating officers at times, the defendant had told him to say certain

things to the police. According to Anderson, the defendant told him: "If anyone asks [where he was at the time of the shooting], tell them that he was with me." See, e.g., *State* v. *Schmidt*, 92 Conn. App. 665, 675–76, 886 A.2d 854 (2005) (consciousness of guilt evidence goes to defendant's state of mind and "may be inferred to have been influenced by the criminal act" [internal quotation marks omitted]), cert. denied, 277 Conn. 908, 894 A.2d 989 (2006).

———————————————