******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL T.*
(AC 41053)

DiPentima, C. J., and Devlin and Sullivan, Js.

*Syllabus*

Convicted, after a jury trial, of five counts of the crime of risk of injury to
a child, two counts of the crime of unlawful restraint in the first degree,
and of the crimes of assault in the first degree, criminal attempt to
commit assault in the first degree, and assault in the second degree,
the defendant appealed to this court. The defendant lived in an apartment
with N, his girlfriend, and her five daughters, including the victims, J
and D. The defendant, after an argument with N, began to yell at the
victims for disobeying a rule about hanging out of their bedroom window.
The defendant then grabbed J, lifted her off the ground and carried her
to the stove in the kitchen, where he ignited the gas burner and placed
J's right hand over the flame. The defendant dropped J, but he then
picked up D and carried her to the stove, where he placed both of her
hands on top of the flame for up to one minute. Subsequently, D received
medical treatment at a hospital for her severe burns and underwent
several surgical procedures, including the amputation of several finger-
tips. Forensic interviews of the victims were recorded and, in those
recordings, the victims identified the defendant as the individual who
had burned their hands on the open flame from the stove burner. Prior
to trial, the defendant filed a motion in limine to preclude the state from
entering video recordings of the forensic interviews into evidence, which
the trial court denied on the first day of trial. At the close of the state's
case, and again at the close of the defendant's case, the defendant moved
for a judgment of acquittal with respect to two counts that charged him
with risk of injury to a child, and the court denied those motions.
Following the jury's verdicts, the defendant filed a motion for a new
trial on the ground that the admission into evidence of the forensic
interviews necessitated a new trial, which the court denied prior to
sentencing. *Held*:

1. The defendant's unpreserved claim that the trial court abused its discretion
   by admitting the forensic interviews into evidence because they failed
   to satisfy the requirements of the medical diagnosis and treatment excep-
   tion to the rule against hearsay, as established in *State* v. *Griswold* (160
   Conn. App. 528), was not reviewable; the defendant's appellate argument
   differed from what was presented to the trial court, defense counsel
   having claimed before the court that *Griswold*, a case where the defen-
   dant sexually abused the victims, was inapplicable to the present case
   and that the admission of a forensic interview pursuant to the medical
   treatment and diagnosis exception required evidence of a sexual assault.

2. The defendant could not prevail on his claim that the forensic interviews
   of the victims were not relevant: the relevancy argument raised by
   defense counsel to the trial court, which focused on the connection
   between forensic interviews, cases involving sexual assault and the
   constancy of accusation doctrine, contradicted existing precedent and
   was wholly without merit because the medical diagnosis and treatment
   exception to the rule against hearsay has no direct connection to the
   constancy of accusation doctrine and is not limited to sexual assault
   cases; moreover, the defendant's claim on appeal that the recordings
   of the forensic interviews failed to meet the standard of the applicable
   provision (§ 4-1) of the Connecticut Code of Evidence in that they did
   not tend to make the existence of any material fact more or less probable
   than it would be without such evidence, was unavailing, as, during the
   forensic interviews, the victims identified the defendant as the person
   who had burned their hands and discussed the extent of the injuries
   they suffered, which satisfied the low hurdle of relevance and had
   obvious value to the state's case.

3. The defendant's claim that the prejudicial impact of the forensic interviews
   of the victims outweighed their probative value and that those interviews
   were cumulative and, therefore, should not have been admitted into
   evidence, was not reviewable; the defendant failed to brief that claim

adequately, as he addressed the claim in a single sentence and failed to cite any authority or to present any reasoning to support his claim regarding the prejudicial impact or cumulative nature of the forensic interviews.

4. The defendant could not prevail on his claim that the trial court improperly denied his motions for a judgment of acquittal with respect to two counts of risk of injury to a child, which was based on his claim that neither J nor D were placed at risk of injury to their physical or mental health because neither victim actually witnessed the burning of the other; it was undisputed that D was present in the apartment when the defendant burned J and that J was in the apartment when he burned D, the jury reasonably could have concluded, on the basis of N's testimony and the photographs admitted into evidence that depicted the layout of the apartment, that the defendant created a situation that was likely to result in injury to D's mental health as a result of her witnessing the burning of J, and although there was conflicting evidence as to whether J directly observed the burning of D, evidence is not insufficient because it is conflicting or inconsistent, as it is the jury's exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses, and the jury can decide what part of a witness' testimony to accept or reject.

5. The defendant could not prevail on his claim that the trial court made a constitutional and evidentiary error when it improperly precluded him from presenting evidence of third-party culpability by not allowing him to testify about N's prior statement to him that she had burned the victims, which was based on his claim that the court improperly determined that the statement against penal interest exception to the rule against hearsay did not apply to N's alleged admission to the defendant that she had burned the victims: the defendant had to establish the unavailability of N to use the statement against penal interest hearsay exception, and although the defendant claimed that N was unavailable because she was reluctant at trial to make a statement against her penal interest, there were pauses in her testimony, her version of the events was opposite to that of the defendant, her testimony would not be favorable to the defendant, and she had demonstrated a willingness to lie to protect herself, those contentions, unsupported by case law or other legal authority, failed to acknowledge that N testified during the defendant's criminal trial and were not encompassed within the five situations of unavailability previously set forth by our Supreme Court; accordingly, the trial court did not abuse its discretion in ruling that the statement against penal interest exception to the rule against hearsay did not apply, and, therefore, the defendant could not prevail on his evidentiary or constitutional claims.

Argued September 9—officially released December 3, 2019

*Procedural History*

Substitute information, in the first case, charging the defendant with three counts of the crime of risk of injury to a child, and with the crimes of assault in the first degree and unlawful restraint in the first degree, and substitute information, in the second case, charging the defendant with three counts of the crime of risk of injury to a child, and with the crimes of criminal attempt to commit assault in the first degree, assault in the second degree, and unlawful restraint in the first degree, brought to the Superior Court in the judicial district of New Haven, where the cases were consolidated and tried to the jury before *B. Fischer, J.*; thereafter, the court denied the defendant's motion to preclude certain evidence; subsequently, the court denied the defendant's motions for a judgment of acquittal as to two counts of risk of injury to a child; verdicts of guilty of five counts of risk of injury to a child, two counts of unlawful restraint in the first degree, and one count each of assault in the first degree, criminal attempt to

commit assault in the first degree, and assault in the second degree; thereafter, the court denied the defendant's motion for a new trial, and rendered judgments in accordance with the verdicts, from which the defendant appealed to this court. *Affirmed.*

*Judie Marshall*, with whom, on the brief, was *Freesia Singngam*, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, *Maxine Wilensky*, senior assistant state's attorney, and *Karen A. Roberg*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Michael T., appeals from the judgments of conviction,[1] rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (2), five counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), two counts of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (2), and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). On appeal, the defendant claims that the trial court (1) abused its discretion by admitting into evidence the forensic interviews of the two minor victims, (2) improperly denied his motions for a judgment of acquittal with respect to two counts of risk of injury to a child and (3) improperly precluded the defendant from presenting evidence of third-party culpability. We disagree and, accordingly, affirm the judgments of conviction.

The jury reasonably could have found the following facts. In August, 2015, the defendant lived in a New Haven apartment with N, his girlfriend,[2] and her five daughters, including eight year old J and four year old D. J and D shared a bedroom with their sibling, S. In the early afternoon of August 16, 2015, the defendant, N and her five children, one of whom was the defendant's child, were in the apartment when a neighbor came to the door. N spoke to the neighbor and their conversation escalated into an argument over the actions of J, S and D. After this interaction with the neighbor, N went into the bedroom and observed J and D "hanging out of the window." Previously, the defendant had placed screws in the window frame to prevent the children from engaging in this behavior. Upon seeing J and D hanging out of the window, N "yelled" and then "spanked" them each one time with her hand. N then sent the two girls into the living room.

The defendant, after an argument with N, subsequently came out of his bedroom and ordered J, S and D to exit their room. After the three girls came out of their room, the defendant began to yell at them for disobeying the rule about hanging out of their window. He then grabbed J, lifted her off the ground and carried her to the stove in the kitchen. The defendant ignited the front gas burner and placed J's right hand over the flame. J, in pain and crying out, began to kick and, as a result, the defendant dropped her.

The defendant then picked up D and carried her to the stove, where he placed both of her hands "on top of the flame." D yelled and screamed as the defendant kept her hands in the fire for up to one minute. Afterward, the defendant, a former emergency medical technician, instructed N to submerge D's hands into the

bathtub filled with warm water. He further instructed N to go to a nearby pharmacy for medical supplies to treat D's burns.

By the time N returned to the apartment from the pharmacy, D had white blisters on her hands, and the defendant indicated that she needed to go to the hospital due to third-degree burns. The defendant spoke to his mother to obtain transportation to the hospital. He then instructed N, J, S and D to falsely state that D's burns had resulted from an accident. The defendant, N and D went to the hospital, while the other girls stayed with the defendant's mother.

As a result of her burns, D screamed and cried during the car ride to the Saint Raphael Campus of the Yale New Haven Hospital. At this point, N observed that D's hands appeared white and "bubbly." Upon arriving at the emergency department, D received immediate treatment from the medical staff. Mark Shapiro, a physician and the head of the emergency department, observed pronounced burns on both sides of D's hands. Although D's left hand sustained greater damage, Shapiro determined that both hands exhibited second-degree and third-degree burns.[3] He also described the charring under D's fingernails as indicative of a fourth-degree burn.[4] After evaluating D and prescribing pain medication, Shapiro arranged for her transfer to the burn treatment unit at Bridgeport Hospital.[5] D received medical treatment at Bridgeport Hospital for approximately six weeks, undergoing several surgical procedures, including the amputation of several fingertips.

In the early morning hours of August 17, 2015, Khristine Cuddy, a New Haven police detective, went to Bridgeport Hospital to investigate the circumstances of D's injuries. N provided Cuddy with consent to search the New Haven apartment. Cuddy proceeded to the apartment, arriving at approximately 7 a.m. After further investigation, Cuddy interviewed J. Cuddy observed a blistered burn on the bottom portion of J's right hand. Later that day, the Department of Children and Families invoked a ninety-six hour hold[6] on the five children and obtained an order of temporary custody on August 21, 2015.[7]

Monica Vidro, a licensed clinical social worker employed by the Yale Child Sexual Abuse Clinic, conducted forensic interviews of J and D on August 28, 2015, and October 13, 2015, respectively. In these recordings, J and D identified the defendant as the individual who had burned their hands on the open flame from the stove burner. Afterward, Vidro recommended that both children receive mental health treatment, which they did.

The state charged the defendant in two long form informations. The first information set forth the following alleged crimes with respect to J: criminal attempt

to commit assault in the first degree in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (2); assault in the second degree in violation of § 53a-60 (a) (2); three counts of risk of injury to a child in violation of § 53-21 (a) (1) by placing J's hand over an open flame, failing to seek medical attention for J and causing J to witness the burning of D; and unlawful restraint in the first degree in violation of § 53a-95 (a). The second information set forth the following alleged crimes with respect to D: assault in the first degree in violation of § 53a-59 (a) (2); three counts of risk of injury to a child in violation of § 53-21 (a) (1) by placing D's hand over an open flame, denying D medical attention and causing D to witness the burning of J; and unlawful restraint in the first degree in violation of § 53a-95 (a).

At the conclusion of the trial, held in July, 2017, the jury found the defendant guilty on all counts, with the exception of the count charging risk of injury to a child by failing to seek medical attention for J. The court rendered judgments of conviction in accordance with the verdicts and imposed a total effective sentence of thirty-eight years of incarceration, execution suspended after twenty-eight years, and five years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the trial court abused its discretion by admitting into evidence the forensic interviews of the two minor victims. Specifically, he argues that the forensic interviews of J and D (1) did not meet the requirements of the medical diagnosis and treatment exception to the rule against hearsay, (2) were irrelevant and (3) were more prejudicial than probative and were cumulative. The state counters that these arguments are unreviewable, meritless or harmless. We conclude that the defendant cannot prevail on this claim.[8]

The following additional facts and procedural history are necessary for our discussion. On June 16, 2017, the defendant filed a motion in limine to preclude the state from entering video recordings of the forensic interviews into evidence. In his motion, the defendant primarily argued that the recordings were irrelevant.[9] On July 6, 2017, the state filed a memorandum of law in support of admitting the recordings of the forensic interviews into evidence.[10] Five days later, the defendant filed a reply, iterating his claim of irrelevance.[11]

On the first day of trial and outside of the presence of the jury, the court heard argument on the admissibility of the forensic interviews. The prosecutor emphasized that the interviews satisfied the requirements for the medical treatment exception to the rule against hearsay and, thus, were admissible into evidence. Defense counsel argued that forensic interviews were

admissible only in cases involving a sexual assault. He further contended that "the reason [forensic interviews] usually are allowed in terms of relevance is because we have this theory of constancy, that a sex assault victim is going—is not going to—or normally is not going to say anything. That's usually the relevance." He also claimed that the present matter, involving physical abuse, was distinguishable from *State* v. *Griswold*, 160 Conn. App. 528, 127 A.3d 189, cert. denied, 320 Conn. 907, 128 A.3d 952 (2015), a sexual assault case.[12] The prosecutor countered, inter alia, that the existence of sexual abuse is not a prerequisite for the admissibility of a forensic interview.

The court issued a preliminary ruling that, subject to an offer of proof, the forensic interviews of J and D would be admitted into evidence pursuant to the medical treatment hearsay exception and the reasoning set forth in *State* v. *Griswold*, supra, 160 Conn. App. 528. After both J and D had testified, the state called Vidro as a witness outside the presence of the jury. Vidro described her educational background, her employment with the Yale Child Sexual Abuse Clinic and the purpose of and the manner in which a forensic interview is conducted.[13] Vidro emphasized that the particular purpose of a forensic interview was to assess any needs regarding the child's safety, medical treatment and mental health treatment. Vidro conducted a forensic interview of J and D following a referral due to abuse concerns. Following the interviews, Vidro recommended that both children continue receiving mental health treatment at the trauma clinic of the Yale Childhood Violent Trauma Center.

At the conclusion of the state's offer of proof, defense counsel again challenged the relevancy of the recordings of the forensic interviews of J and D. The court admitted the recordings into evidence, stating: "I'm going to stand by my preliminary ruling, and I do make the following findings regarding the medical treatment exception: that this court concludes that the statements are admissible because the purpose of the interviews, despite being primarily to establish or prove past events potentially relevant to later criminal prosecutions, [was] at least, in part, to determine whether the victims were in need of medical treatment. That would include physical and/or mental health. The statements were reasonably pertinent to obtain a medical diagnosis or treatment, and the interviewers—the interviewer occupied a position within the chain of medical care. Again, this court follows the reasoning of *State* v. *Griswold*, [supra, 160 Conn. App. 528]."

Vidro then testified before the jury. She stated her training, qualifications and general information regarding a forensic interview of a child.[14] She noted that the forensic interview with J occurred in August, 2015, following a referral due to suspected abuse. The prose-

cutor played a redacted recording of J's forensic interview for the members of the jury and provided a typed transcript. During the interview, Vidro informed J that her job was to speak with children to ensure their safety and health. Vidro also indicated that a pediatrician and other individuals were observing the interview from a nearby room. Following the interview, Vidro recommended that J engage in mental health treatment and have no contact with the defendant.

Vidro conducted the forensic interview of D in October, 2015,[15] as a result of suspected abuse. The prosecutor again provided a transcript to the jury and played a redacted recording. During the interview, Vidro informed D that her job was to make sure "kids are safe and healthy" and that her coworkers, such as physicians and nurses, would observe the conversation. Vidro subsequently recommended mental health treatment and that D have no contact with the defendant.

Following the jury's verdicts, the defendant filed a motion for a new trial pursuant to Practice Book § 42-53. He argued, inter alia, that the admission into evidence of the forensic interviews necessitated a new trial. The court denied the defendant's motion for a new trial prior to sentencing.

A

On appeal, the defendant claims that the court abused its discretion by admitting the forensic interviews into evidence. He first contends that the forensic interviews failed to satisfy the requirements of the medical diagnosis and treatment exception to the rule against hearsay as established in *State* v. *Griswold*, supra, 160 Conn. App. 528, and *State* v. *Estrella J.C.*, 169 Conn. App. 56, 148 A.3d 594 (2016). The state counters that this appellate argument differs from what was presented to the trial court and, thus, is unpreserved and not reviewable. We agree with the state.

We begin with the applicable legal principles. "Our standard of review for evidentiary claims is well settled. To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Taupier*, 330 Conn. 149, 181, 193 A.3d 1 (2018), cert. denied,      U.S.     , 139 S. Ct. 1188, 203 L. Ed. 2d 202 (2019); see also *State* v. *Miguel C.*, 305 Conn. 562, 571–72, 46 A.3d 126 (2012).

Hearsay is an out-of-court statement offered for the truth of the matter asserted and generally is inadmissi-

ble. *State* v. *Burton*, 191 Conn. App. 808, 828, 216 A.3d 734, cert. denied, 333 Conn. 927,     A.3d     (2019); see also *State* v. *Carrion*, 313 Conn. 823, 837, 100 A.3d 361 (2014); see generally Conn. Code Evid. § 8-1 and Conn. Code Evid. (2009) § 8-2. The rules of evidence, however, recognize that certain out-of-court statements warrant an exception to the general rule that hearsay constitutes inadmissible evidence. *State* v. *Cruz*, 260 Conn. 1, 7, 792 A.2d 823 (2002). Section 8-3 (5) of the Connecticut Code of Evidence provides that "[a] statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment" is not excluded by the hearsay rule, even though the declarant is available as a witness.

In *State* v. *Griswold*, supra, 160 Conn. App. 528, this court set forth the relevant legal principles regarding the medical diagnosis and treatment exception to the hearsay rule. "Out-of-court statements made by a patient to a [medical provider] may be admitted into evidence if the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving these ends. . . . The rationale for excluding from the hearsay rule statements made in furtherance of obtaining treatment is that we presume that such statements are inherently reliable because the patient has an incentive to tell the truth in order to obtain a proper medical diagnosis and treatment. . . . The term medical encompasses psychological as well as somatic illnesses and conditions. . . . Statements made by a sexual assault complainant to a social worker may fall within the exception if the social worker is found to have been acting within the chain of medical care. . . . Although [t]he medical treatment exception to the hearsay rule requires that the statements be both pertinent to treatment and motivated by a desire for treatment . . . in cases involving juveniles, [we] have permitted this requirement to be satisfied inferentially." (Citations omitted; internal quotation marks omitted.) Id., 555–56; see also *State* v. *Abraham*, 181 Conn. App. 703, 711, 187 A.3d 445, cert. denied, 329 Conn. 908, 186 A.3d 12 (2018); see generally E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 8.17.2, pp. 566–67.

Before the trial court, defense counsel argued that the admission of a forensic interview pursuant to the medical treatment and diagnosis exception required evidence of a sexual assault. Defense counsel concluded by noting that because the present case involved physical abuse, *Griswold*, a case where the defendant sexually abused the victims, was inapposite.

On appeal, however, the defendant altered his argument regarding the admission of the forensic inter-

views. Rather than arguing that *Griswold* was inapplicable to the present case, the defendant contended in his appellate brief that the state had failed to establish the necessary elements for application of the medical diagnosis and treatment hearsay exception, as set forth in *Griswold*. Our law does not permit such a tactic. "It is . . . well established that [a]ppellate review of evidentiary rulings is ordinarily limited to the specific legal [ground] raised by . . . trial counsel. . . . To permit a party to raise a different ground on appeal than [that] raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party." (Internal quotation marks omitted.) *State* v. *Rogers*, 183 Conn. App. 669, 680, 193 A.3d 612 (2018); see also *State* v. *Bennett*, 324 Conn. 744, 761, 155 A.3d 188 (2017). Accordingly, we decline to review the defendant's argument, raised for the first time on appeal, that the state failed to establish that the forensic interviews in this case should have been admitted into evidence pursuant to *Griswold*.[16]

B

The defendant next argues that the forensic interviews of J and D were not relevant. Initially, he notes that the court did not rule on the relevancy objection made in his motion in limine and at the proceedings on July 19 and 24, 2017. The defendant also asserts, in a general manner, that the recordings of the forensic interviews failed to satisfy § 4-1 of the Connecticut Code of Evidence. The state counters that recordings of the interviews tended to make more probable the facts that the crimes had occurred and had been committed by the defendant. We conclude that the defendant's relevancy arguments are without merit.

As an initial matter, we set forth the applicable legal principles. "Section 4-1 of the Connecticut Code of Evidence provides: Relevant evidence means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. As it is used in [the Connecticut Code of Evidence], relevance encompasses two distinct concepts, namely, probative value and materiality. . . . Conceptually, relevance addresses whether the evidence makes the existence of a fact material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . In contrast, materiality turns upon what is at issue in the case, which generally will be determined by the pleadings and the applicable substantive law. . . . If evidence is relevant and material, then it may be admissible. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable

presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Sampson*, 174 Conn. App. 624, 635–36, 166 A.3d 1, cert. denied, 327 Conn. 920, 171 A.3d 57 (2017); see also *State* v. *Pena*, 301 Conn. 669, 674, 22 A.3d 611 (2011).

The relevancy argument raised by defense counsel to the trial court focused on the connection between forensic interviews, cases involving sexual assault and the constancy of accusation doctrine. Specifically, defense counsel stated: "The point being that in my opinion, and I think the cases are pretty clear, the reason we do the forensic interviews and the reason they're usually allowed in terms of relevance is because we have this theory of constancy, that a sex assault victim is going—is not going to—or normally is not going to say anything. That's usually the relevance. And so what the state usually does is they put in the forensic interview to show that they are consistent with what they testified to or what has been said in—in the case. That's why it's relevant. In this case that didn't happen. . . . So, there's no constancy issue in this case. So, really there's no reason to need to put in the forensic interview in the first place. . . . There's no constancy issue, so there's no relevance."

In its preliminary ruling on the admissibility of the forensic interviews, the court implicitly rejected the defendant's relevancy argument premised on the constancy of accusation doctrine. After restating § 8-3 (5) of the Connecticut Code of Evidence, the court referred to *State* v. *Griswold*, supra, 160 Conn. App. 528. In that case, we specifically stated that the rationale for the medical diagnosis and treatment hearsay exception is that "statements made in furtherance of obtaining treatment [are presumed to be] inherently reliable because the patient has an incentive to tell the truth in order to obtain a proper medical diagnosis and treatment." (Internal quotation marks omitted.) Id., 555; see also *State* v. *Cruz*, supra, 260 Conn. 7–8; *State* v. *Miller*, 121 Conn. App. 775, 780, 998 A.2d 170, cert. denied, 298 Conn. 902, 3 A.3d 72 (2010). To the extent that the defendant has reasserted this specific relevancy argument in this appeal, we conclude that it contradicts existing precedent and is wholly without merit. The medical diagnosis and treatment hearsay exception has no direct connection to the constancy of accusation doctrine and is not limited to sexual assault cases.

The defendant also argues that the recordings of the forensic interviews failed to meet the standard of § 4-1 of the Connecticut Code of Evidence, in that they did not tend to make the existence of any material fact more or less probable than it would be without such evidence. We do not agree. In the forensic interviews, J and D identified the defendant as the person who had

burned their hands and discussed the extent of the injuries they suffered. Mindful that our jurisprudence has recognized the "low hurdle of relevance"; see *State* v. *Nowacki*, 155 Conn. App. 758, 773, 111 A.3d 911 (2015); and the obvious value of this evidence to the state's case, we conclude that this argument fails.

C

The defendant next argues that the prejudicial impact of the forensic interviews of J and D outweighed their probative value. He also contends that these interviews were cumulative and, therefore, should not have been admitted into evidence. The state counters that these arguments are unreviewable due to an inadequate brief. We agree with the state.

The defendant's appellate brief contains the following single sentence addressing these arguments. "Even if the trial court believed the forensic interviews were relevant, they should have been excluded pursuant to . . . § 4-3 [of the Connecticut Code of Evidence] because [their] probative value was outweighed by the danger of unfair prejudice, and the evidence was cumulative." The defendant failed to cite any authority or to present any reasoning to support his arguments regarding the prejudicial impact or cumulative nature of the forensic interviews.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Fowler*, 178 Conn. App. 332, 345, 175 A.3d 76 (2017), cert. denied, 327 Conn. 999, 176 A.3d 556 (2018). "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *State* v. *Claudio C.*, 125 Conn. App. 588, 600, 11 A.3d 1086 (2010), cert. denied, 300 Conn. 910, 12 A.3d 1005 (2011). Accordingly, we decline to review these unsubstantiated arguments regarding the prejudicial impact and cumulative nature of the recordings of the two forensic interviews. We also conclude, therefore, that the defendant's claim that the court improperly admitted into evidence the forensic interviews of J and D must fail.

II

The defendant next claims that the court improperly denied his motions for a judgment of acquittal with respect to two counts of risk of injury to a child. Specifically, he argues that the state failed to produce evidence that J witnessed the burning of D, and that D witnessed the burning of J. He contends that neither J nor D were

placed at risk of injury to their physical or mental health because neither victim actually witnessed the burning of the other. We disagree.

The following additional facts are necessary for the resolution of this claim. In count four of the first information, the state charged the defendant with violating § 53-21 (a) (1) by causing or permitting D to be placed in a situation that her life or limb was endangered, or her health was likely to be injured, by allowing her to witness the burning of J. In count five of the second information, the state alleged the same violation of § 53-21 (a) (1) with respect to J as a result of her witnessing the burning of D. The defendant moved for a judgment of acquittal with respect to these two counts at the close of the state's case[17] and his case.[18] In both instances, the court denied the defendant's motions.

On appeal, the defendant argues that the state failed to produce evidence that each girl directly observed the burning of the other, and therefore the defendant's conduct fell outside the ambit of § 53-21 (a) (1).[19] We are not persuaded.

We begin our analysis by setting forth the relevant legal principles germane to this claim. "A defendant who asserts an insufficiency of the evidence claim bears an arduous burden. . . . The standard of review [that] we [ordinarily] apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . Simply stated, [o]n appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Berrios*, 187 Conn. App. 661, 671–72, 203 A.3d 571, cert. denied, 331 Conn. 917, 204 A.3d 1159 (2019); see also *State* v. *Harper*, 184 Conn. App. 24, 30, 194 A.3d 846, cert.

denied, 330 Conn. 936, 195 A.3d 386 (2018).

Next, we turn to the relevant statutory language. Section 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of (A) a class C felony . . . ." In construing this statute, our Supreme Court has long recognized that "subdivision (1) of § 53-21 [(a)] prohibits two different types of behavior: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the [child's] moral or physical welfare . . . and (2) acts directly perpetrated on the person of the [child] and injurious to his [or her] moral or physical well-being. . . . Thus, the first part of § 53-21 [(a) (1)] prohibits the creation of situations detrimental to a child's welfare, while the second part proscribes injurious acts directly perpetrated on the child." (Emphasis omitted; internal quotation marks omitted.) *State* v. *James E.*, 327 Conn. 212, 219, 173 A.3d 380 (2017); see also *State* v. *Padua*, 273 Conn. 138, 147–48, 869 A.2d 192 (2005). This statute criminalizes the creation of a situation likely to result in injury to the mental health of a child. See *State* v. *Scruggs*, 279 Conn. 698, 713–14, 905 A.2d 24 (2006); *State* v. *Aziegbemi*, 111 Conn. App. 259, 265–66, 959 A.2d 1, cert. denied, 290 Conn. 901, 962 A.2d 128 (2008). Finally, "[w]e are mindful that § 53-21 (a) (1) is broadly drafted and was intended to apply to any conduct, illegal or not, that foreseeably could result in injury to the health of a child." *State* v. *Scruggs*, supra, 724–25.

Applying these principles to the facts of the present case, we conclude that the defendant's claim of evidentiary insufficiency must fail. It is undisputed that D was present in the apartment when the defendant burned J and that J was in the apartment when he burned D. N stated that she was cleaning the kitchen when the defendant called J, S and D out of their room. The defendant, after screaming at the girls, picked up J, carried her to the stove, ignited the flame and burned her. On the basis of this testimony, and the photographs admitted into evidence that depicted the layout of the apartment, the jury reasonably could have concluded that the defendant created a situation that was likely to result in injury to D's mental health as a result of her witnessing the burning of J.

With respect to J, there was conflicting evidence as to whether she directly observed the burning of D. In her forensic interview, J stated that she and N attempted to stop the defendant when he was holding D's hands over the flame. D also indicated during her forensic interview that J saw the defendant burn D's hands. J

testified at trial, however, that after the defendant had burned her hands, she went to her bedroom. She heard D cry out as she was getting burned. J saw D after the burning, when D placed her hands in the bathtub filled with water. D testified at trial that J was in her bedroom when the defendant burned her. We are mindful that "[e]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Young*, 174 Conn. App. 760, 766, 166 A.3d 704, cert. denied, 327 Conn. 976, 174 A.3d 195 (2017). Accordingly, we conclude that the defendant's claims of evidentiary insufficiency are without merit.

III

Finally, the defendant claims that the court improperly precluded him from presenting evidence of third-party culpability. The defendant contends that this preclusion resulted in constitutional and evidentiary error. Specifically, he argues that the court should have permitted him to testify about N's prior statement to him that she had burned J and D. We disagree.

The following additional facts are relevant to this claim. On direct examination, N testified that the defendant had physically assaulted her and burned J and D. She also admitted to lying to Detective Cuddy about the burnings, both at the hospital and a few days later. The police arrested N on August 28, 2015, and interviewed her again. During this interview, N inquired to the police detective: "Why can't you just say it was me and call it a day?" N later testified that she made this untruthful remark from a desire to conclude the investigation. N also iterated that she did not burn the victims but that it was the defendant who had done so.

The defendant testified at his trial and stated on direct examination that N had made an "admission" to him. The prosecutor objected on the basis of hearsay, which the court sustained. On redirect examination, defense counsel asked if the defendant ever had told the police that N confessed to him. The prosecutor raised an objection, which the court sustained. At this point, the court excused the jury, and the prosecutor indicated that the objection was based on hearsay. Defense counsel responded that N's admission constituted a statement against a penal interest and had not been offered for the truth of the matter asserted. The court disagreed and again sustained the prosecutor's objection.

The court permitted defense counsel to make an offer of proof. The defendant testified that N had confessed to burning the victims and that the defendant had informed the police of this confession. The jury returned, and

the court stated it had sustained the prosecutor's objection. In his motion for a new trial, dated August 3, 2017, the defendant reasserted this claim, arguing that the evidence was not hearsay because (1) it was not offered for the truth of the matter asserted or (2) it constituted a statement against civil or penal interests.

On appeal the defendant claims, for the first time, that the court's ruling violated his sixth amendment right to present a defense.[20] He also claims that the court improperly determined that the statement against penal interest exception to the hearsay rule did not apply to N's admission to the defendant that she had burned the victims. We conclude that the court did not abuse its discretion in ruling that this hearsay exception did not apply, and therefore the defendant cannot prevail on either his evidentiary or constitutional claims.

First, we set forth the applicable legal principles and our standard of review. "When a trial court improperly excludes evidence in a criminal matter, the defendant's constitutional rights may be implicated. It is fundamental that the defendant's [right] . . . to present a defense [is] guaranteed by the sixth amendment to the United States constitution. . . . In plain terms, the defendant's right to present a defense is the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . .

"Nevertheless, [i]t is well established that a trial court has broad discretion in ruling on evidentiary matters . . . . Accordingly, the trial court's ruling is entitled to every reasonable presumption in its favor . . . and we will disturb the ruling only if the defendant can demonstrate a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Watson*, 192 Conn. App. 353, 375–76,     A.3d     (2019); see also *State* v. *Durdek*, 184 Conn. App. 492, 499 n.5, 195 A.3d 388 (defendant is bound by rules of evidence in presenting defense, and if proffered evidence constitutes inadmissible hearsay, defendant's constitutional right to present defense is not violated by its exclusion), cert. denied, 330 Conn. 934, 194 A.3d 1197 (2018); *State* v. *Ramos*, 182 Conn. App. 604, 614, 190 A.3d 892 (sixth amendment rights, although substantial, do not suspend rules of evidence), cert. denied, 330 Conn. 917, 193 A.3d 1213 (2018).

Section 8-6 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness . . . (4) . . . A trustworthy statement against penal interest that, at the time of its making, so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. In determining the trustworthiness of a statement against penal interest, the court shall con-

sider (A) the time the statement was made and the person to whom the statement was made, (B) the existence of corroborating evidence in the case, and (C) the extent to which the statement was against the declarant's penal interest. . . ." See also *State* v. *Bryan*, 193 Conn. App. 285, 299,   A.3d   (2019); *State* v. *Azevedo*, 178 Conn. App. 671, 685–86, 176 A.3d 1196 (2017), cert. denied, 328 Conn. 908, 178 A.3d 390 (2018); E. Prescott, supra, § 8.34.2, pp. 631–32.

To use the statement against penal interest exception to the rule against hearsay, "the proponent of the evidence must demonstrate that the declarant is unavailable. See *State* v. *Schiappa*, 248 Conn. 132, 141, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999)." *State* v. *Rodriguez*, 146 Conn. App. 99, 109, 75 A.3d 798, cert. denied, 310 Conn. 948, 80 A.3d 906 (2013). Thus, in the present case, the defendant had to establish the unavailability of N to use the statement against penal interest hearsay exception. See *State* v. *Bryant*, 202 Conn. 676, 694, 523 A.2d 451 (1987).

Our Supreme Court has employed the definitions of "unavailability" from rule 804 (a) of the Federal Rules of Evidence with respect to this hearsay exception. *State* v. *Lopez*, 239 Conn. 56, 74–75, 681 A.2d 950 (1996); see also *State* v. *Wright*, 107 Conn. App. 85, 89–90, 943 A.2d 1159, cert. denied, 287 Conn. 914, 950 A.2d 1291 (2008). "Rule 804 (a) lists five situations in which the declarant witness may be considered unavailable: (1) the court has determined that the witness has a testimonial privilege; (2) the witness persists in refusing to testify despite a court order to do so; (3) the witness has a lack of memory; (4) the witness is unable to be present or testify because of death or existing physical or mental illness or infirmity; and (5) the witness is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . [or testimony] by process or other reasonable means." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Frye*, 182 Conn. 476, 481, 438 A.2d 735 (1980).

The defendant argues that N "was unavailable, pursuant to the rules of evidence and, therefore, her statement should have come in as a statement against penal interest." Specifically, he noted that N was "reluctant" at trial to make a statement against her penal interest, there were "pauses" in her testimony, her version of the events was "opposite" to that of the defendant, her testimony would not be "favorable" to the defendant and she had demonstrated a willingness to lie to protect herself. These contentions, unsupported by case law or other legal authority, fail to acknowledge that N *testified* during the defendant's criminal trial and are not encompassed within the five situations of unavailability set forth by our Supreme Court. As a result of the defendant's inability to meet the threshold requirement of N's unavailability, the statement against penal inter-

est hearsay exception cannot provide a path to admit this testimony into evidence. Further, as a result of the court's proper evidentiary ruling, the defendant's constitutional claim must fail.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[1] These convictions arose from charges set forth in two separate informations that had been consolidated and tried together.

[2] In connection with the events of this case, N was arrested on August 28, 2015. On November 21, 2016, she pleaded guilty to five counts of risk of injury to a child in violation of § 53-21 (a) (1). Her sentence, which had not been imposed at the time of the defendant's trial, was capped at twenty years incarceration, execution suspended after ten years, with the right to argue for a lesser sentence.

[3] Shapiro described a first-degree burn as "something analogous to a sunburn. . . . It can be a thermal burn, it can be from chemicals. It's a very superficial burn that only involves the outer layer of the skin called the epidermis . . . ." Shapiro further explained that "[a] second-degree burn is one that is deeper and goes into the dermis, which is the layer below the epidermis where there's nerves and fat and other structures. And that can be either partial or full thickness second-degree burns based on how deep it goes within that layer. . . . [A] third-degree burn basically is a full thickness burn, meaning that it goes through all the layers of the skin . . . ." In the emergency department, burn classification is determined by the appearance of the burned area, with "first [degree] being pink, second [degree] being blistered, [and] third [degree] being white."

[4] Specifically, Shapiro stated: "When you see black or brown or charring, that can indicate a deeper burn. Brown or black is when it gets through the skin and starts to get down into the muscle and the bone, but on a fingernail it just may be the nail itself is charred, but the thing is, usually black or brown is a sign of even—what we call a fourth-degree burn, which is when you get to the muscle and the bone." Richard Garvey, a surgeon at the Bridgeport Hospital, stated that the presence of this black material indicated a heat source of approximately 700 degrees Fahrenheit.

[5] Shapiro also testified that the defendant had told the nurses that D's injuries resulted from touching a hot stove. Shapiro stated that this statement was inconsistent with the burns on both sides of D's hands that he observed because a person generally does not touch something with the back of their hand, or with both hands.

[6] See General Statutes § 17a-101g (e) and (f).

[7] See General Statutes (Rev. to 2015) § 46b-129 (b).

[8] As a result of our conclusion that the defendant failed to demonstrate that the trial court abused its discretion in admitting the forensic interviews into evidence, we need not reach the issue of harm. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the . . . testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Ayala*, 333 Conn. 225, 231–32, 215 A.3d 116 (2019); see also *State* v. *Tarasiuk*, 192 Conn. App. 207, 218,     A.3d (2019) (incumbent on defendant to show that nonconstitutional evidentiary error was harmful in order to obtain new trial).

Assuming, arguendo, that this court were to reach the issue of harm, we would conclude that the defendant had failed to meet his burden that an

evidentiary error substantially affected the verdict. The defendant argued that the admission of the forensic interviews was harmful because the jury heard from J and D more than once, the forensic interviews occurred in a sympathetic setting and the prosecutor focused on these interviews in her closing argument. The state countered that the evidence against the defendant was overwhelming in that four witnesses identified the defendant as the person who burned J and D, and the medical testimony established that the burns were neither accidental nor self-inflicted. Additionally, the state presented consciousness of guilt evidence supporting its case against the defendant. Thus, if this court were to reach the issue of harm, we would conclude that the defendant had failed to meet his burden that an evidentiary error substantially affected the verdict.

[9] Specifically, the defendant stated that "most cases involving a forensic interview involve an allegation of sex abuse . . . [and that] most sex abuse cases involve a delay in disclosing the actual abuse . . . ." The defendant further argued that the relevancy of forensic interviews usually is based on the constancy of accusation doctrine. We note that this doctrine "permits a person to whom a sexual assault victim has reported the alleged assault to testify regarding the fact and timing of the victim's complaint." *State* v. *Samuels*, 273 Conn. 541, 547, 871 A.2d 1005 (2005); see generally Conn. Code Evid. (2009) § 6-11 (c); *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996). More recently, our Supreme Court concluded that "the constancy of accusation doctrine should continue to be employed in Connecticut to counter implicit juror bias against victims, including children, who delay in reporting sexual abuse, but in a modified form intended to address the potential prejudice to defendants caused by the testimony of multiple constancy witnesses." *State* v. *Daniel W. E.*, 322 Conn. 593, 618, 142 A.3d 265 (2016).

[10] In its memorandum, the state, inter alia, acknowledged that the recordings contained the hearsay statements of J and D, but asserted that they were admissible under the medical treatment or tender years exceptions to the rule against hearsay.

[11] Specifically, the defendant contended that the constancy of accusation doctrine is limited to cases of sexual assault, that this was not a case of "incremental disclosure" by J and D and that the concept of incremental and delayed disclosure by abused children is "well-known." (Internal quotation marks omitted.)

[12] Specifically, defense counsel stated: "If you look at *Griswold*, that obviously involved a sex assault case. Although it doesn't talk about the underlying reasons for why it was relevant in the first place, I think it's presupposed that those forensic interviews were relevant because we had a constancy issue because most people, according to our law, most people don't think that sex assault victims are going to—or they think that sex assault victims, if they were raped, would tell immediately. That's the purpose of allowing that interview in. I understand what *Griswold* says. I don't really have an answer, this, you know, this forensic interview was pretty much done exactly the way they said in *Griswold*. I don't have a problem with that. My point is, this is not *Griswold* because it's an assault, a physical assault. And there's no question as to when it took place and what the kids said. . . . And I still haven't heard what the state's relevance is relative to either [J's] or [D's] interviews. . . . This is an extremely big stretch of *Griswold*, and I think that's inappropriate."

[13] Our law recognizes that the statement sought to be admitted pursuant to this hearsay exception need not be made to a physician, so long as the interviewer is acting within the chain of medical care. See *State* v. *Cruz*, 260 Conn. 1, 10, 792 A.2d 823 (2002); *State* v. *Eddie N. C.*, 178 Conn. App. 147, 171, 174 A.3d 803 (2017), cert. denied, 327 Conn. 1000, 176 A.3d 558 (2018); *State* v. *Donald M.*, 113 Conn. App. 63, 71, 966 A.2d 266, cert. denied, 291 Conn. 910, 969 A.2d 174 (2009).

[14] Specifically, Vidro defined a forensic interview as "a nonleading fact-finding interview of a child where there is a concern of abuse." She also stated that the purposes of such an interview are to assess whether the child is safe, requires medical care or requires mental health treatment. Vidro noted that the interview is recorded and that the child is made aware that others will observe the interview. The purpose of the recording and the presence of observers, such as an employee of the Department of Children and Families or a member of a law enforcement agency, is to minimize the trauma of multiple interviews.

[15] Vidro explained that D's hospitalization caused the delay of her forensic interview.

[16] After the verdict, the defendant filed a motion for a new trial pursuant to Practice Book § 42-53. He argued, inter alia, that the forensic interviews "did not fall under the medical diagnosis exception to the general prohibition against hearsay." An evidentiary argument raised for the first time in a postverdict motion for a new trial is not preserved for appellate review. See *State* v. *Daniel W.*, 180 Conn. App. 76, 96 n.7, 182 A.3d 665, cert. denied, 328 Conn. 929, 182 A.3d 638 (2018); see also *State* v. *Messam*, 108 Conn. App. 744, 760, 949 A.2d 1246 (2008) (problems inherent in allowing counsel to wait until after adverse verdict to raise objections to evidence are too obvious to warrant discussion).

[17] At the close of the state's case, defense counsel argued: "These are the counts where, essentially, [the defendant] is alleged to have forced one of the kids to watch the burning of both kids, and there's two counts because there's two injuries or two victims. My recollection is that there's no evidence of that. He didn't deliberately do that. In fact, I think the testimony for [J] is that she was in the bedroom, at least during the part of it when it happened, and she certainly wasn't—he was deliberately forcing her to watch. But I think that that's—that covers both counts . . . ."

[18] Specifically, defense counsel stated: "I would just say just for the record I'm going to—we move for motion for judgment of acquittal based on the prior arguments I made."

[19] At trial, the defendant challenged the absence of the general intent element with respect to § 53-21 (a) (1); see, e.g., *State* v. *Euclides L.*, 189 Conn. App. 151, 161–62, 207 A.3d 93 (2019); while on appeal, he focuses his sufficiency claim on whether each child was present when the other was burned. To the extent that his appellate argument is unpreserved, it is nevertheless reviewable by this court. See *State* v. *Revels*, 313 Conn. 762, 777, 99 A.3d 1130 (2014), cert. denied, 574 U.S. 1177, 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015); *State* v. *Griffin*, 184 Conn. App. 595, 613, 195 A.3d 723, cert. denied, 330 Conn. 941, 195 A.3d 692 (2018), and cert. denied, 330 Conn. 941, 195 A.3d 693 (2018).

[20] The defendant requests review of this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).